## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

_____

| | |
|---|---|
| Tahisha Williams-Brewer as Trustee for Courtney Williams, Deceased, | Civil No. _____ |
| Plaintiff, | |
| | **COMPLAINT** |
| v. | |
| City of Minneapolis, Minnesota, Scott Mars, in his individual capacity, John Does 1-5, | **JURY TRIAL DEMANDED** |
| Defendants. | |

_____

The Trustee of Courtney Williams states and alleges as follows:

### SUMMARY OF CLAIMS

Plaintiff brings this lawsuit claiming: I) excessive force causing death; II) *Monell* liability of the City of Minneapolis for direct and/or constructive knowledge of Mars' violations of civil rights including use of excessive force, and because its "shoot to kill" policy is unconstitutional; III) John Does' 1-5 interference with Williams' next of kin in bringing this lawsuit, by manipulating the "investigation" into the death of Courtney Williams in order to protect Mars from civil or criminal liability.

### PARTIES

1.     **Courtney Williams** ("Williams") was 15 years of age when he was shot and killed by then-Minneapolis Police Officer Scott Mars.  The fact that Mars

intentionally shot and killed Williams is not disputed, and Mars admitted the intentional fatal shooting when he was interviewed on October 25, 2004.  Courtney Williams sues through his Mother, natural guardian, and appointed Trustee, Tahisha Williams-Brewer ("Plaintiff").

2.      Defendant **City of Minneapolis** ("City") is a charter city in the State of Minnesota and a municipality for purposes of 42 U.S.C. § 1983.  The MPD is a department within the City.  (For purposes of clarity, this Complaint will refer to the MPD in the discussion of policy, but all references to the MPD are references to the defendant municipality).  The City is liable under 42 U.S.C. §1983 for violation of civil rights because:  A) the City/Chief Policymakers were on constructive notice due to numerous complaints about or bad acts of Mars, the City knew Mars was a danger to the public, and the City failed to take action to prevent Mars from injuring or killing a member of the public; B) Minneapolis had at the time, an continues to this day to have an outdated and unconstitutional "shoot to kill" policy requiring police, when shooting a civilian, to shoot to kill (the "shoot to kill" policy); and C) Minneapolis failed to have policies, training and appropriate discipline in place to prevent police from killing civilians, and then using public resources to cover up the crime by police.

3.      **Scott Mars** was a Minneapolis Police Officer in 2004.  Upon information and belief he was fired from the Minneapolis police force in October 2008, after he recklessly discharged a gun out of the sunroof of a vehicle after

2

leaving a party.  He plead guilty in December 2008 to the felony firearms-related

offense (Minn. Stat. §609.66.1a(a)(3)) and was sentenced in January 2009.  Upon

information and belief his peace officer license has been revoked.

4.      John-Jane Does 1-5 are reserved for other City officials who are

identified as having engaged in the cover up to protect Mars, or to protect the civil

coffers from paying out on a civil rights or wrongful death case.

## JURISDICTION

5.      Pursuant to 28 U.S.C. §1331, this Court has original jurisdiction over this

matter, which arises in part under the laws of the United States including 42 U.S.C.

§1983.

## FACTUAL STATEMENT

6.      On October 23-24, 2004, Courtney Williams was 14 years old.  He was

playing with some friends in North Minneapolis.  Youth interviewed later indicated

they started to run because they thought the police were chasing them for being out

under curfew, or that they ran because they did not know what was going on.

7.      Then-Minneapolis Police Officer Mars chased Courtney Williams into

an alley.  Mars told Williams to stop and put his hands up.  When Williams did that,

Mars shot and killed Williams.

8.      Williams was shot under his right armpit, with the entrance wound

indicating that he was facing Mars at the time of the shooting, with his hands raised

in surrender.

9.     And eyewitness testimony shows that Williams complied with the
Officer's demand that he put his hands up – that Williams' hands were raised in the
air *in compliance* at the time Mars intentionally shot and killed him.

10.     Williams was shot and killed in Minneapolis, on October 24, 2004.  He
was removed from the scene in a body bag and declared DOA at the hospital.

11.     No force (or minimal force) was necessary at the time Williams was
shot.  Mars used deadly forced, unnecessary and excessive under the circumstances.
No shooting, at all, was necessary, and all discharge of Mars' firearm was excessive
force.  Mars' use of deadly force was the cause of the death of Courtney Williams.

12.     Mars' story to the MPD was designed to protect himself and to thwart a
grand jury investigation, and to prevent, forestall or impair a civil lawsuit against
him.   Other police officers assisted in bolstering Mars' story, either by withholding
evidence (claiming they were not eye witnesses to the shooting when they were) or
by fabricating or manipulating evidence.

13.     After two MPD Homicide detectives performed a brief, perfunctory
"investigation" designed to clear Mars (rather than really investigate whether
Williams was murdered), the then Chief of Police re-assigned the investigation to
two different Homicide Detective.  The second set of Detectives performed a much
more extensive investigation, including interviews of eye witnesses.  But when it
came time to transfer MPD records to the prosecutor's office for the grand jury

proceedings against Mars, the brief, perfunctory investigation was provided – rather than the more-extensive investigation.

14.     In 2004 (and presently) the MPD had promulgated policy that officers were required to follow, mandating that when a police officer shoots a civilian, s/he must shoot to kill.  This policy is unconstitutional, and establishes Monell liability for the City of Minneapolis.

15.     The City was/should have been aware of numerous complaints about Mars' conduct in violation of civil rights, regarding use of force, and otherwise put the City on actual and/or constructive notice that Mars was a danger to the public. The City failed to take timely and appropriate action.  Instead, the City had a policy or custom of covering up police excessive force in order to protect the officer(s) and/or the City from liability.

**COUNT I**
**Violation of 42 U.S.C. §1983**
**(Against all Defendants)**

16.     Plaintiff realleges the above allegations as if hereinafter set forth in full and further states and alleges as follows:

17.     This claim arises under Title 42 of the United States Code (Civil Rights Act of 1964, as amended), including but not limited to §1983.

18.     Defendant Mars acted alone in the actual shooting of Williams. Defendants acted together in covering up the misconduct of Mars.

19.    Defendants deprived Plaintiff/Williams of his rights, privileges, and immunities secured by the United States Constitution, and specifically the Fourteenth Amendment to the United States Constitution, in conjunction with other rights, including but not limited to the following clearly established rights:

a.    **Excessive force.**  Shooting and killing Williams was unnecessary and excessive.  The shooting was intentional, was incompetent, or in disregard of clearly-established law.

b.    **Access to courts** (often referred to as a First Amendment violation, although at times referred to in case law as a bundle of rights and/or due process right):  Mars and John Does deliberately covered up evidence that would have established that Mars murdered Williams and/or used excessive force, and mis-directed the evidence to try to justify Mars' shooting of Williams.

c.    **Substantive due process**.  Manipulating an official investigation, covering up evidence, fabricating evidence, and similar (as discussed above), shocks the conscience of the modern community.

20.    The City of Minneapolis is liable under a *Monell* theory of liability for the reasons stated throughout this Complaint, and as further expressed in paragraphs 21 through 24, below.

21.     The City was on notice of Mars' conduct and failed to protect the public/Williams.

22.     The City is also liable because of its unconstitutional "shoot to kill" policy which requires the use of excessive force in numerous situations involving police shootings of civilians, where such force is not called for by the circumstances, is unreasonable, and which causes serious harm and/or death to members of the public.

23.     The City is also liable because it has failed to implement policies or effective discipline to prevent police from mis-using their public office, authority to obtain warrants, authority to seize witnesses and hold them until interviewed, their access to information and witnesses, and other, in order to divert any investigation away from the police perpetrator, and toward a conclusion that the shooting was "justified."

24.     The City is further liable because its training of police officers is unconstitutional:  training focuses primarily on officer safety (with minimal focus on the rights of civilians), leading officers to believe that their lives are more important than the lives of civilians, and that their main goal, every day, every shift, is to protect themselves.  This encourages use of excessive force by police, and then the predictable "justification" that police were protecting themselves.  It encourages police to escalate force, and then try to claim the advantage of the escalated force to "justify" their use of force.  The result is that the public are not safe from Minneapolis Police Officers who use force unnecessarily, who escalate when good policing dictates that they de-

escalate, and who time and again take actions based on the presumption that their lives are more important than the lives of those they have taken an oath to protect. Under the Constitution, Williams' life was just as important and valuable as the life of officers on the force.  Training officers to think that their lives are more important encourages trigger-happy officers who objectify human beings, so that rather than carefully assessing the situation so as to use the least amount of force necessary, they use force first, and think later.  A police policy or custom that permits police to mis-use their authority and public resources in order to cover up excessive force further encourages the cycle of excessive force and harm to the public.

25.    Defendants (and each of them) knew they were violating the federal law and constitutional rights of Plaintiff/Williams and/or acted with deliberate indifference to the rights of Plaintiff/Williams (or acted intentionally to harm) as noted above.

26.    The Defendants acted under color of law of a statute, ordinance, regulation, resolution, policy, custom or usage when they deprived Plaintiff of his Constitutional rights, privileges, and immunities.

27.    As a direct and proximate result of the Defendants' conduct, inaction, policy or customs as set forth in more detail above, Plaintiff suffered the deprivation of his constitutional and/or federal statutory rights and suffered personal injuries, including injury to her career/loss of income, eviction, loss of personal property,

humiliation, mental anguish and suffering, and emotional distress.  It is not necessary to prove that Mars violated Williams' rights in order to hold the City liable.

28.     By reason of the foregoing, Plaintiff has been damaged in an amount in excess of $50,000.

**COUNT II**

**INJUNCTION**

29.     Plaintiff realleges the above allegations as if hereinafter set forth in full and further states and alleges as follows:

30.     Plaintiff is entitled to an injunction prohibiting the City of Minneapolis from utilizing or enforcing its "shoot to kill" policy.

**PRAYER FOR RELIEF**

 **WHEREFORE**, Plaintiff prays for relief in the form of an injunction against Defendants, and each of them, and/or as follows:

1.     Judgment in a reasonable amount in excess of $50,000;

2.     Interest on the aforesaid amounts;

3.     Awarding to Plaintiff her reasonable attorney fees and costs and disbursements incurred herein; and

4.     Issuing a temporary and/or permanent prohibitory injunction prohibiting Defendants, their officers, agents, employees, and successors, from engaging in the illegal practices complained of herein.

5.      Plaintiff seeks punitive damages on all applicable federal claims.

***

Plaintiff hereby demands a trial by jury on all applicable Counts.   Plaintiff reserves the right to amend to add a claim for punitive damages under State law.


Dated:  October 22, 2010                              **ATTORNEYS FOR PLAINTIFF**
                                                      **JILL CLARK, P.A.**

                                                      s/jillclark
                                                      _____
                                                      By:  Jill Clark, Esq. (#196988)
                                                      2005 Aquila Avenue North
                                                      Minneapolis, MN 55427
                                                      PH:  (763) 417-9102
                                                      E: jill@jillclarkpa.com